# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JEWELL EWING, | ) | |
| | ) | |
| Plaintiff, | ) | Case: 1:25-cv-12447 |
| | ) | |
| v. | ) | |
| | ) | |
| MARTENSON, HASBROUCK & SIMON LLP, | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Jewell Ewing ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Martenson, Hasbrouck & Simon LLP ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII") redress for Defendant's race-based discrimination, race-based harassment, and retaliation.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to jurisdiction have been satisfied.

5. Plaintiff filed a charge of discrimination on the basis of race and retaliatory discharge with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

6. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

7. This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

8. Plaintiff, Jewell Ewing, is a natural person, over 18-years-of-age, who at all times relevant to the allegations of this Complaint resided in Cook County, Illinois.

9. Defendant, Martenson, Hasbrouck & Simon LLP, whose address is 500 Davis Street, Evanston, Illinois 60201, is an entity that at all times material to the allegations in this Complaint was doing business in and for Cook County, Illinois.

10. Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C §2000e(f).

11. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## BACKGROUND FACTS

12. Plaintiff worked for Defendant as an associate from on or about May 1, 2023, until Plaintiff's unlawful termination on January 19, 2024.

13. Plaintiff met or exceeded Defendant's legitimate performance expectations throughout the entire duration of her employment despite Defendant's Senior partner implementing arbitrary and disparate expectations for Plaintiff that peers did not have.

14. Plaintiff is African American and is a member of a protected class because of her race.

15. Since the beginning of Plaintiff's employment, Defendant has subjected Plaintiff to different terms and conditions of employment than others not within her protected class and has subjected Plaintiff to a hostile work environment on the basis of race, violating Title VII and Section 1981.

16. During interviews, Kelly Eisenlohr-Moul ("Kelly"), Defendant's Senior Partner, seemed fond of Plaintiff, but this tone shifted drastically once Plaintiff began working for Defendant.

17. During the interview process, Plaintiff learned that Defendant's office was approximately one hour away from where Plaintiff lived.

18. When discussing concerns about the distance, Kelly ensured Plaintiff that she would be permitted to work remote just as the recruiter had discussed.

19. During the interview, Kelly informed Plaintiff that candidates with little to no experience were ideal because these candidates would be trained on Defendant's litigation practices.

20. Once beginning work for Defendant, Plaintiff not only learned that the remote work policy would subject her to scrutiny but that Defendant's office would treat Plaintiff differently than those outside her protected class (non-African Americans).

21. For example, while working for Defendant, Plaintiff was consistently given work that was less complicated than her non-African American peers.

22. Additionally, Plaintiff was typically assigned cases involving African American clients, typically racial discrimination claims – limiting Plaintiff's ability to further develop as an associate.

23. Defendant's use of Plaintiff's skills only with clients within her protected class is discriminatory because it assumes Plaintiff's race determines her competence or suitability for certain clients, thereby denying her equal professional opportunities and reinforcing racial stereotypes.

24. In addition to her assignments being limited to clients within Plaintiff's protected class, Plaintiff was also not being assigned complex writing assignments while peers and lower-level law clerks were despite being told staffing of writing assignments was based on experience.

25. For example, Plaintiff was being given assignments such as demand letters and eventually position statements.

26. However, Plaintiff's non-African American peers were being assigned position statements, motion for summary judgement, motion for injunctions, and more.

27. Then, Plaintiff's assignments were more heavily scrutinized more frequently and more severely than her non-African American peers.

28. Shortly after beginning her employment, in or around May 2023, Plaintiff spoke with Kelly regarding her remote work schedule.

29. At this point the recruiter, Kelly and Mary Martenson, Defendant's Manager, informed Plaintiff that she was permitted to work remote with no restrictions.

30. During this discussion, Kelly verbally told Plaintiff that she would need to bill 160 hours per month despite her billing requirement being 150 hours per month,

31. Prior to this discussion, Defendant had presented the position to Plaintiff as a flexible role with remote, hybrid, and in office work arrangements.

32. Despite the sudden change in billable hours requirement for Plaintiff's work arrangement, Plaintiff was able to successfully bill the necessary 160 hours requirement in May, June, July, August and September of 2023.

33. In or around May 2023, Plaintiff was assigned two mentors: Patty Simon, a named partner, and Devin Cohen, a senior associate.

34. During this time, Plaintiff worked closely with Devin and often confided about the disparate treatment that Plaintiff was enduring due to Defendant's actions.

35. In or around August 2023, Plaintiff received her first and only Employee Evaluation while employed with Defendant.

36. During the evaluation, Kelly and Devin expressed that Plaintiff was a great asset to the team and that she had not been provided any substantial writing assignments.

37. Later on, Devin separated from Defendant and the disparate treatment Plaintiff had been subjected to intensified.

38. On September 11, 2023, Kelly initiated a meeting with Corinne to discuss Plaintiff's performance.

39. Kelly started the meeting by saying "your work product has been poor since you started."

40. However, just a few weeks prior, at the 90-day employee review, Kelly had stated the opposite suddenly changing her perspective on Plaintiff's work.

41. Kelly identified several assignments she claimed necessitated the meeting such as:

5

    a. Discovery Response: Plaintiff volunteered to assist in drafting discovery responses – a task she had never done and had not been trained on. She volunteered to draft to gain experience to which Jennifer Pope ("Jennifer"), a fully remote associate, told Plaintiff to "take a stab at" it. The very next day Jennifer told Plaintiff to stop doing the discovery responses and instead turn her attention to a more time sensitive matter. Although Kelly knew, this was not Plaintiff's original assignment, and that Jennifer had benefited from Plaintiff's draft, this situation was weaponized against Plaintiff. Plaintiff's peers were never treated in this inappropriate manner.

    b. Statement of position: Kelly claimed this assignment was late and required significant revisions including failing to include critical facts, contained no headers and made conclusory arguments. Plaintiff submitted a timely five page draft where the changes made were standard stylistic changes and typical partner feedback. Plaintiff's peers often received similar feedback and edits on their initial drafts, but they were not subjected to the same criticism that Plaintiff did nor were they required to attend a formal meeting with Human Resources. Furthermore, Plaintiff's peers were trained on Defendant's litigation practices and encouraged to learn through trial and error. Plaintiff was not granted the same way to learn.

    c. Statement of position: Kelly claimed that Plaintiff's draft failed to address a harassment claim plead by the charging party, failed to address the state law claims, and failed to utilize certain key evidence in the argument section that was contained in the personnel documents. Plaintiff was given the files to

6

       complete this assignment just days before it was due. To finalize in a timely manner, Plaintiff worked 8:00AM to 9:30PM. When Plaintiff received this assignment, she still had not been trained on Defendant's litigation practices, no direction from the assigning partner, and received neither support nor guidance from Kelly. Consequently, Plaintiff worked closely with Jennifer on the assignment to ensure if aligned with Defendant's litigation practice. Even though Jennifer reviewed the draft, providing little to no feedback, she had at least attempted to help Plaintiff unlike Kelly who had provided no interest in training or providing any guidance. Plaintiff never received any edits from the assigning partner, which was routine practice. Still, Plaintiff's assignment was scrutinized more aggressively than her peers.

   d. Additionally, Plaintiff was scrutinized for a research assignment. Kelly had instructed Plaintiff to prioritize time sensitive matters over research assignments. However, when Plaintiff did this, Plaintiff was scrutinized differently than her peers. Plaintiff's peers were not assigned this sort of last-minute research projects. Instead, they were given complex writing assignments.

42. Prior to the meeting, Kelly would not speak to Plaintiff directly about assignments nor did Kelly ever train Plaintiff on litigation practices as promised during her initial interview.

43. Instead of direct communication, Jennifer, would relay messages to Plaintiff on Kelly's behalf.

44. By the time the September 11, 2023, meeting was held, Defendant's disparate treatment of Plaintiff on the basis of her race was abundantly clear.

7

45. Plaintiff engaged in protected activity by reporting the conduct to the Human Resource Coordinator via email in September regarding the disparate treatment she was experiencing including the arbitrary application of the remote work policy.

46. Instead of addressing Plaintiff's concerns, Defendant ignored Plaintiff's complaint, and did not investigative or take any remedial measures.

47. Despite Plaintiff's position stating that she could work remotely and Plaintiff meeting the 160 billable hour requirement, Kelly would consistently scold Plaintiff whenever she elected to work remote – something Plaintiff's non-African American peers were not subjected to.

48. Specifically, Kelly would send cryptic emails demanding to know Plaintiff's whereabouts and then would later forward these files to Plaintiff's personnel file creating a false narrative that Plaintiff's whereabouts were unknown.

49. By October 2023, Plaintiff had only been assigned one dispositive motion while Plaintiff's non-African American peers had been assigned five or more – even Plaintiff's less experienced peers received more writing assignments.

50. In or around October 2023, Plaintiff was excluded by Kelly from her non-African American peers for the resume review and interview process of Hannah Savaso.

51. In or around late October, Defendant placed Plaintiff on a Performance Improvement Plan (PIP).

52. Defendant's justification for the PIP was dissatisfaction with Plaintiff's assignments.

53. Kelly sent Plaintiff a Teams Meeting invite on a Sunday evening.

54. Unaware of what the meeting was for, Plaintiff informed Kelly that she would need to attend remotely because she was under the weather.

55. When Plaintiff joined the meeting, she realized that both the Human Resource Coordinator and Kelly were already in the meeting talking.

56. During the brief moments, Plaintiff heard Kelly lie stating that Plaintiff knew "she should be here."

57. However, Plaintiff had no reason to believe she should have been physically present, especially when she was under the weather and received the electronic meeting invite with less than 24 hours' notice.

58. Kelly went on to discuss how Defendant could use Plaintiff's decision to join remotely than in person against her.

59. When discussing the assignments, Kelly grossly exaggerated and blatantly misrepresented the condition of Plaintiff's assignments.

60. In or around November, one of Defendant's paralegals noticed the disparate treatment that Kelly subjected Plaintiff too.

61. The paralegal optimistically suggested that more personal matters may create a better connection between Plaintiff and Kelly.

62. Around this time, it became apparent that Kelly would tell Plaintiff that her drafts were poorly written and required substantial edits, while simultaneously instructing the paralegal to make minor formatting changes and file the document.

63. On or about November 9, 2023, Plaintiff was excluded from a lunch and learn unlike her non-African American peers.

64. On or about November 17, 2023, Kelly Jines, a partner in the New York office provided Kelly with positive feedback regarding Plaintiff including requesting Plaintiff to assist with other matters following the Thanksgiving holiday.

65. Instead of applauding Plaintiff or even mentioning the positive feedback, Kelly blocked Plaintiff from working with Ms. Jines.

66. On or about November 29, 2023, on a phone call, Kelly stated that the managing partner – Marty, "thinks all of my" team members "are shit".

67. Following this, Kelly named all of her team members are reiterated all the issues Marty had with them.

68. Despite Kelly stating collective issues about her team members, Plaintiff was the only team member terminated and subjected to such disparate treatment.

69. In or around November 2023, Kelly began drastically reducing the amount of work she assigned to Plaintiff.

70. Plaintiff verbally asked Kelly for more work and specifically requested more substantive writing assignments.

71. On or about December 5, 2023, after it became apparent that Kelly would not give Plaintiff any additional work assignments, Plaintiff sought work assignments from Ms. Jines.

72. In response, Ms. Jines stated she had asked Kelly to allow Plaintiff to work on several assignments, but Kelly had denied Ms. Jines request.

73. Therefore, Kelly was taking intentional actions to prevent Plaintiff from meeting her hourly billing requirement by preventing work from being assigned to her.

74. In December 2023, Plaintiff was the only staff member within the office who did not receive a Christmas cash bonus.

75. Kelly had hand delivered these bonuses to all employees except Plaintiff and Eduardo Roa.

76. Instead, Eduardo had received his bonus via Venmo from Kelly.

77. Defendant claims that Plaintiff's bonus check was put in an empty unlocked office even though in the past they were handed directly to employees.

78. Throughout Plaintiff's employment, Plaintiff engaged in protected activity and reported the disparate treatment she was experiencing on multiple occasions to Devin, to Kelly, to Human Resource Coordinator in hopes of the treatment being addresses– to no avail.

79. Specifically, she made reports to both Senior Partner, Kelly, and Human Resource coordinator Corinne Wolfersberger.

80. Despite Plaintiff's complaints, Defendant initially failed to adequately investigate or take remedial action until Plaintiff informed Defendant that she was obtaining counsel because of the disparate treatment.

81. During both September and October, Plaintiff's complaint of disparate treatment was ignored.

82. Ultimately, Plaintiff was unlawfully terminated because of her race (African American) on or about January 19, 2024.

83. Plaintiff was retaliated against, and her employment was ultimately terminated for opposing unlawful discrimination and harassment and for exercising her protected rights.

84. Plaintiff reported the race-based discrimination and harassment to Defendant.

85. Plaintiff was targeted for termination because of her race.

86. Plaintiff suffered multiple adverse employment actions including but not limited to being terminated.

87. There is a basis for employer liability for the race-based harassment and discrimination to which Plaintiff was subjected.

11

88. Plaintiff can show that she engaged in statutorily protected activity—a necessary component of her retaliation claim—because Plaintiff made complaints to HR via email.

## COUNT I
### Violation of 42 U.S.C. §1981
### (Race-Based Discrimination)

89. Plaintiff repeats and re-alleges paragraphs 1-88 as if fully stated herein.

90. Section 1977 of the Revised Statutes, 42 U.S.C. §1981, as amended, guarantees persons of all races, colors, and national origin the same right to make and enforce contracts, regardless of race, color, or national origin. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

91. Defendant's conduct against Plaintiff's race amounts to a pattern or practice of systemic race discrimination that constitutes illegal, intentional race discrimination in violation of 42 U.S.C. §1981.

92. Plaintiff was subjected to and harmed by Defendant's systemic and individual discrimination.

93. Defendant's unlawful conduct resulted in considerable harm and adverse employment action to Plaintiff and Plaintiff is therefore entitled to all legal and equitable remedies under §1981.

94. As a direct and proximate result of the race-based discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964
### (Race-Based Discrimination)

95. Plaintiff repeats and re-alleges paragraphs 1-88 as if fully stated herein.

96. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

97. Plaintiff is a member of a protected class under Title VII, due to Plaintiff's race, African American.

98. Plaintiff met or exceeded performance expectations.

99. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

100. Defendant terminated Plaintiff's employment on the basis of Plaintiff's race.

101. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

102. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT III
### Violation of Title VII of the Civil Rights Act of 1964
### (Retaliation)

103. Plaintiff repeats and re-alleges paragraphs 1-88 as if fully stated herein.

104. Plaintiff is a member of a protected class under 42 U.S.C. §2000e, *et seq*. due to Plaintiff's race (African American).

105. During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted race-based discrimination and harassment.

106. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

107. In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of race-based discrimination and harassment.

108. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

109. Plaintiff's suffered adverse employment action in retaliation for engaging in protected activity.

110. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff reporting race-based discrimination and harassment, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

111. Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

112. As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

    a.    Back pay with interest;

    b.    Payment of interest on all back pay recoverable;

    c.    Front pay;

  d.  Loss of benefits;

  e.  Compensatory and punitive damages;

  f.  Reasonable attorneys' fees and costs;

  g.  Award pre-judgment interest if applicable; and

  h.  Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury. Dated this 10th day of October 2025.

                /s/ *Chad W. Eisenback*
                **CHAD W. EISENBACK, ESQ.**
                IL Bar No.: 6340657
                **SULAIMAN LAW GROUP LTD.**
                2500 S. Highland Avenue, Suite 200
                Lombard, Illinois 60148
                Phone (331) 307 - 7632
                Fax (630) 575 - 8188
                ceisenback@sulaimanlaw.com
                *Attorney for Plaintiff*